SELMA, ROME AND DALTON RAILROAD COMPANY, plaintiff in error, vs. GEORGE W. KEITH, defendant in error.

1. A motion for a new trial was made during the term of the court at which the verdict was rendered, and sixty days allowed by order for the filing of the brief of the evidence. Such brief was agreed to within the time allowed, but it was not convenient for the judge to hear the motion at the appointed date, so he approved the evidence and ordered the same to be filed without limitation as to time. After the expiration of the sixty days allowed by the first order had expired, a second order was passed, by consent of plaintiff's counsel, that the motion should be heard at such time as would suit the judge:

*Held,* that the discretion of the judge in refusing to dismiss the motion for a new trial because the brief of evidence was not filed within the sixty days originally appointed, will not be controlled, especially as plaintiff's counsel made no objection on this ground when they consented to the second order above mentioned.

2. Where the question at issue was as to the damage sustained by the plaintiff by reason of the taking of his land for railroad purposes, evidence of its value to the defendant was inadmissible.

3. Upon the trial of such an issue, evidence of the defendant's having backed water upon the plaintiff's land by the erection of a dam, was inadmissible. His remedy would be by an action of trespass.

4. The testimony of a witness to the effect that he was one of a company about to engage in the pork packing business, and had examined the plaintiff's shoal and water power with the view of purchasing it for that purpose, and was willing to give $6,000 00 therefor; that he thought it was worth that amount, but the other members of the company were not willing to give more than $5,500 00, was inadmissible. It was entirely too speculative and uncertain as to what was the value of the plaintiff's property at the time it was taken.

5. The statement of a witness that, by reference to a book issued by a company advertising the sale of turbine wheels, he came to the conclusion, taking into consideration the fall that could be obtained, that a twenty horse power could be procured, was inadmissible, the book not being in court, and the witness testifying from his recollection of the assertions therein made.

6. The rule of damages in this case is the actual value of the plaintiff's land taken by the defendant for the use of its road, at the time it was so taken, which may be proved by the opinion of witnesses who were acquainted with and had knowledge of its cash value at that time. As to the consequential damage done to the mill shoal by the defendant's road, the plaintiff may show what was its actual cash value at the time the road was located on his land, and how much and to what extent that value was diminished by such location.

Selma, Rome and Dalton Railroad Company *vs.* Keith.

New trial. Practice in the Superior Court. Railroads. Damages. Evidence. Before Judge UNDERWOOD. Whitfield county. At Chambers. May 18th, 1874.

For the facts of this case, see the decision.

PRINTUP & FOUCHE; J. E. SHUMATE, for plaintiff in error.

JOHNSON & McCAMY, for defendant.

WARNER, Chief Justice.

This case came before the court below on an appeal from the assessment of damages for locating the defendant's road on the plaintiff's land under the provisions of its charter. On the trial of the appeal the jury found a verdict for the plaintiff for $2,580 64. The defendant made a motion for a new trial on the several grounds set forth therein, which was overruled by the court, and the defendant excepted.

1. When the motion for a new trial came on to be heard, the plaintiff made a motion to dismiss it on the ground that a brief of the evidence had not been filed in the clerk's office within the sixty days allowed by the order of the court for that purpose. The presiding judge, before whom the motion was heard at chambers, after hearing the statement of counsel on both sides in relation to the matter, overruled the motion to dismiss, and the plaintiff excepted. The brief of the evidence was made out and agreed to, and signed by counsel on both sides within the time allowed by the first order of the court. It was not convenient for the judge to hear the motion within the time allowed, but he approved the brief of the evidence within the time allowed by the first order, and ordered the same to be filed without limit as to time; and the brief of the evidence was in fact filed on the 13th of January, 1874, but not within the sixty days allowed by the first order. The judge had appointed the 13th day of January to hear the motion, but from some cause it was not heard on that day, but

was finally heard on the 18th of May, 1874.    After the time allowed for filing the brief of the evidence had expired by the first order, another order was made in the case by the consent of the plaintiff's counsel, to-wit; on the 18th day of April, 1874, that the motion for new trial should be heard before Judge UNDERWOOD, who presided on the trial of the case, in vacation, at such time as would suit him to hear it, without any objection or protest at that time, that the brief of the evidence had not been filed in time.    When the motion came on to be heard the brief of the evidence had been filed, and the judge having passed a second order for its filing, after his approval of it, without limitation of time, and it having been filed in pursuance of that order within a reasonable time thereafter, and no harm having been done to the plaintiff, either by surprise or otherwise, that we can discover, we will not control the discretion of the presiding judge in refusing to dismiss the motion, the more especially as the plaintiff's counsel made no objection or protest that the brief of evidence had not been filed in time, when they consented to the order of the 18th of April, that the motion should be heard in vacation by Judge UNDERWOOD, when it should suit him to hear it.    It was the duty of the plaintiff's counsel to have protested then, or to have refused their assent to the granting that order for the reason that the brief of evidence had not been filed in time, if they intended to insist upon it at the hearing of the motion.    If a party fails to speak when it is his duty to speak, he will not be heard afterwards.    In our judgment, the court erred in overruling the motion for a new trial.

2. It was error in admitting the testimony of Wells, as specified in the fourth ground of the motion, that defendant had erected a dam across the creek, and was using the water to run a pump to supply the road with water at that station, which was worth to defendant $40 00 per month.    The issue on trial was the amount of damages the plaintiff had sustained from the defendant by the taking of his land for the use of its road, and not what it was worth to defendant, or how profitably it used or employed it, in its business.

3. It was also error in allowing Wells to testify as specified in the fifth ground of the motion, that the defendant had erected a dam across the creek and backed the water on plaintiff's land, and covered two or three acres of it, which was worth $100 00 per acre. If the defendant had trespassed on the land of the plaintiff by the erection of a dam across the creek, it was liable to an action for such trespass, but that question had nothing to do with the assessment of damages for the taking of plaintiff's land for the use of its road.

4. The court also erred in admitting the testimony of Thomas, as specified in the fourth ground of the motion, that he was one of a company to engage in the pork packing business, and examined plaintiff's shoal and water power with a view to purchase it for that purpose; was willing to give $6,000 00 for the lot of land and shoal; thought it was worth that amount, but the other members of the company were not willing to give more than $5,500 00 for it, and he could not get them to give any more. This evidence was entirely too speculative and uncertain, to prove what was the actual value of the plaintiff's land at the time it was taken for the use of the defendant's road, and should have been ruled out.

5. The court further erred in allowing Wells to testify for plaintiff, as set forth in the eleventh ground of the motion, "that by reference to a book issued by a company (Poole & Hunt) to advertise for the sale of turbine wheels, witness came to the conclusion that taking into consideration the fall that could be obtained, a power equal to a twenty horse power could be obtained, and that he so concluded without making any other calculation, said book not being in court, and witness testifying from his recollection of the statements therein made." This testimony was, also, altogether too uncertain and speculative in its character, to establish the value of the plaintiff's land, or any other issue, based as it was upon the recollection of witness as to what he had seen in a turbine wheel vendor's advertisement.

6. Assuming that the charge of the court to the jury was right (and it was not excepted to,) that the defendant could

only acquire the use of the plaintiff's land for railroad purposes, whatever may be the Alabama charter, and not the fee simple title to the plaintiff's land, then, the verdict was contrary to the charge of the court. Whether the charge of the court was right or wrong, in relation to this point in the case, we express no opinion, as we have not the Alabama charter as recognized by the general assembly of this state, before us, as it was not produced on the argument. The rule of damages in this case, is the actual value of the plaintiff's land taken by the defendant for the use of its road at the time it was so taken, which may be proved by the opinion of witnesses who were acquainted with, and had knowledge of its cash value, at that time. As to the consequential damage done to the plaintiff's mill shoal by the location of the defendant's road, the plaintiff may show what was the actual cash value of the mill shoal at the time the defendant's road was located on his land, and then he may show how much and to what extent that actual cash value of his mill shoal was diminished by the location of the defendant's road upon his land at the time it was located. In other words, what was the actual cash value of the plaintiff's mill shoal before the defendant's road was located on his land? How much, and to what extent, was the actual cash value of the plaintiff's mill shoal diminished by the location of the defendant's road on his land at the time it was so located?

Let the judgment of the court below be reversed.