ATLANTA TERRA COTTA COMPANY *v.* GEORGIA RAILWAY AND ELECTRIC COMPANY.

1. In condemnation proceedings under the statute regulating the exercise of the right of eminent domain by a railroad company, the assessors can only determine the amount of compensation to be paid, and can not pass upon the legal power of the company to institute such proceedings, or determine whether or not the quantity of land sought to be taken is necessary for public purposes. The remedy of the landowner is to apply to a court of equity to enjoin the condemnation proceedings, if they are unauthorized, or to enjoin the condemnation of such land as is not necessary for such public purpose.

(a) On appeal from the award of assessors appointed in pursuance of the statute in such proceedings, the issue can not be broadened so as to raise the questions above indicated.

(b) Nor, after having appointed an assessor and entered into an arbitration and accepted money awarded to him by the assessors, will the landowner be heard for the first time, after verdict on appeal, to complain that the evidence failed to show an effort by the condemnor to acquire the property from him by contract before commencement of the proceedings to condemn.

(c) Upon review of the decision in *Piedmont Cotton Mills* v. *Georgia Railway & Electric Co.,* 131 *Ga.* 129 (62 S. E. 52), as to the points stated in the first division and subdivision (a) of this headnote, it is affirmed.

2. Where a notice, which was served on a landowner as the basis for a proceeding to condemn land for a right of way of a railroad, under the Civil Code, 1895, § 4657 et seq., recited that the property was "sought to be condemned for the purpose of building, maintaining, and operating thereon a railroad, side-tracks, terminals, and necessary connections and turnouts," such a notice was not subject to special demurrer on the ground that "it does not appear thereby for which of the purposes specified in said proceedings said plaintiff seeks to condemn this defendant's property, whether for a right of way or side-track, or con-

nections and turnouts," filed on the trial of an appeal entered by the company from an award of assessors in favor of the landowner, who had received the amount so awarded.

3. On the trial of a case the court ordered the witnesses to be sequestered. Counsel for defendant, which was a corporation, requested that both its president and vice-president should be allowed to remain in the court-room to assist in the trial, stating that the president was manager of the company's office and business affairs, and that the vice-president was manager of its manufacturing plant, and that the presence of both was necessary to assist in the trial. The court inquired if both were to be used as witnesses, and, being answered in the affirmative, refused to grant the request, and required the defendant to elect which should remain, the other being excluded from the court-room. *Held,* that there is nothing in the record to show an abuse of discretion on the part of the presiding judge in such ruling.

4. While it may have been unnecessary for the court to charge the jury on the subject of the right of the condemnor to exercise the power of eminent domain, the charge on that subject was harmless to the defendant.

5. On the trial of an appeal from the award of assessors in a proceeding to condemn a right of way for a railroad, it was error to charge, that, "If the injury be small or ,the mitigating circumstances be strong, nominal damages only are given," and that, "If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong-doer."

6. It was inaccurate, on the trial of an appeal in such a proceeding, for the presiding judge to inform the jury that use and occupation for railroad purposes passes to the condemning party "for the duration of its charter, in this case conceded to be 101 years."

7. Where land was sought to be condemned for a right of way of a railroad, on the trial on an appeal to the superior court from the award of assessors, as to the property sought to be taken, the measure of recovery was the fair market value. If it contained valuable clay deposits, that was a proper subject for consideration in determining such value, but there could not be a recovery both for the value of the land and for the clay in it as two separate items.

(*a*) There was no error in refusing to charge that "The defendant is entitled to recover from the Georgia Railway and Electric Company the fair market value of the property taken, the land and also the clay in the land, if there be any, as such value may appear from the sworn evidence in the case."

8. Other assignments of error relating to the charge of the court and rulings touching the admissibility of evidence were not such as to require special reference or to necessitate a reversal. As a new trial will be ordered on other grounds, it is unnecessary to deal with the objection made to the form of the verdict.

Argued November 10, 1908.—Decided April 19, 1909.
Rehearing denied May 12, 1909.

Condemnation—appeal. Before Judge Ellis. Fulton superior court. February 5, 1908.

The Georgia Railway and Electric Company commenced proceedings under the Code of 1895, §§4657 et seq., to condemn a right of way through a tract of land belonging to the Atlanta Terra Cotta Company. The condemnor gave notice to the landowner, assessors were appointed by each, and a third selected. They awarded as the value of the land to be taken the sum of $4,500, and that there were no consequential damages and no consequential benefits to the property of the landowner which was not taken. An appeal was taken by the condemnor. On the trial in the superior court counsel for the appellee moved to dismiss the case, on the grounds, that the condemnor had not been authorized and empowered by law to exercise the right of eminent domain; that it had no right to condemn or take the land described in the proceedings; and that it did not appear that it was necessary to do so for any of the purposes specified. The motion was overruled. The notice given by the condemnor contained this clause: "You are hereby notified, that, whereas you and the Georgia Railway & Electric Company can not agree upon compensation for the property hereinafter sought to be condemned for the purpose of building, maintaining, and operating thereon a railroad, side-tracks, terminals, and necessary connections and turnouts in the following described property owned by you," etc. The appellee specially demurred to the proceedings, "because it does not appear thereby for which of the objects specified in said proceedings said plaintiff seeks to condemn this defendant's property, whether for a right of way or side-tracks, or connections and turnouts." The demurrer was overruled, and exceptions pendente lite were filed. The jury found the following verdict: "We, the jury, find for the Atlanta Terra Cotta Company against the Georgia Railway Company the sum of eleven hundred dollars." The condemnor having paid, and the defendant having received, the $4,500 which had been awarded by the assessors, the judge entered judgment reciting this fact, and that the jury had found $1,100, and thereupon adjudging that the Georgia Railway & Electric Company recover of the Atlanta Terra Cotta Company the difference, amounting to $3,400, with interest. The latter moved for a new trial, which was refused, and it excepted.

*Owens Johnson, H. L. Culberson,* and *Spencer R. Atkinson,* for plaintiff in error.

*Rosser & Brandon* and *Colquitt & Conyers,* contra.

ATKINSON, J.   1. The motion to dismiss the proceedings on appeal complained that under the law the Georgia Railway & Electric Company had no authority to exercise the power of eminent domain, or right to condemn and take the land in question, and that there was no necessity for taking such land; and these questions were also argued under certain grounds of the motion for a new trial.   In different States of the Union the method of exercising the right of eminent domain is not uniform, and the issues which can be made in such proceedings in the several States may differ.   In this State it has been held, that, in condemnation proceedings under the statute, the assessors can only determine the amount of compensation to be paid, and can not pass upon the legal power of a railroad company to institute such proceedings or determine whether or not the quantity of land sought to be taken is necessary for public purposes.   The owner of such land has the right to have a court of equity intervene and enjoin the condemnation of such land as is not necessary for such purpose. *Piedmont Cotton Mills* v. *Ga. Ry. & El. Co.,* 131 *Ga.* 129 (62 S. E. 52), and cases therein cited.   On appeal from the award of the assessors to a trial by a jury, the issue can not be broadened so as to raise the questions here sought to be made, but the trial is still as to the amount to be awarded to the landowner under the proceedings.   Civil Code of 1895, §4678.   We have been asked to review and modify the decision in the case cited above, on the ruling mentioned, but, on review as to the points mentioned, we decline to modify it.   This being so, the application to review that case on the question of the power of a street and suburban railroad company to condemn land need not be considered, the point not being one which can be raised in this case.

It was argued on one side that no charter or amendment to a charter was introduced in evidence, authorizing the condemning company to exercise the right of eminent domain, or to construct and operate a line of railway at the place where the condemnation was sought to be made, and that the courts will not take judicial cognizance of what may be contained in petitions or applications filed by persons desiring charters or amendments to charters in

the office of the secretary of State, but only of the powers conferred upon them by the general laws of the State when it has been made to appear that a charter has been granted. On the other hand it was argued that under the decision in *Atlanta & West Point R. Co.* v. *Atlanta, Birmingham & Atlantic R. Co.*, 124 *Ga.* 125 (52 S. E. 320), judicial cognizance will be taken of the charter granted to a railroad company by the secretary of State. The ruling which has been above made as to the remedy by injunction renders it unnecessary to discuss the question here raised, further than to say, that, while some of the language in the decision cited in 124 *Ga.* may have stated the ruling somewhat broadly, that case arose under an application to the equitable power of the superior court to enjoin a company from condemning land. The petition, which was filed on May 6, 1905, alleged that the defendant railroad company had no authority under the law to take the property of the plaintiff; it was also alleged that the company seeking to condemn was a corporation under the laws of this State, "recently incorporated," and authorized to construct a railroad between certain named points. In the opinion reference was made to this allegation, and it was treated as fixing the fact that the charter was issued by the secretary of State under the general law. As the law for the issuing of charters to railroads by the secretary of State in the general form in which it now exists has been in force for a number of years past, the allegation in the pleadings of the other party, that the condemning company had been "recently incorporated," practically conceded that it had been chartered by the secretary of State. So that the question as to whether or how far statements or recitals in petitions and applications filed with the secretary of State should be taken judicial cognizance of by the courts was not then finally determined, nor is it necessary to do so now in a case arising only on an appeal from the award of assessors.

It was also argued that the statute requires an antecedent effort to agree with a property owner, before beginning condemnation proceedings, and that no such effort was proved on the appeal trial. If, under the statutory form of procedure to condemn land in this State, the point mentioned can be raised and tried, there was no traverse of the statement in the notice, no plea or objection at any time till after verdict. Such an effort to agree can be

waived by the property owner, and in this case it was waived. The owner went into the assessment apparently without objection, received the amount of the award, and held it, entering no appeal. He went through the trial on appeal, with no effort to raise any such issue; and he is in no position to do so on the ground that the verdict determining the amount to be paid should be set aside for want of proof on that subject.

2.   A special demurrer was filed to the notice given by the condemnor to the landowner.   The statement in the notice was that the property was "sought to be condemned for the purposes of building, maintaining, and operating thereon a railroad, side-tracks, terminals, and necessary connections and turnouts."   The objection raised by the demurrer was "because it does not appear thereby for which of the purposes specified in said proceedings said plaintiff seeks to condemn this defendant's property, whether for a right of way or side-track, or connections and turnouts."   The demurrer does not specifically refer to the expression "terminals." A notice which forms the basis of condemnation proceedings should put the landowner on notice of the purpose for which it is proposed to take and use a portion of the land sought to be condemned. A mere statement that a company desired to condemn the land, without more, or a general statement that it was desired for public purposes, would not put him on notice as to the purpose or the particular use or uses to which the land was to be applied, nor would it be sufficient to show that in fact the purpose was a public one.   But the law does not require needless particularity and detail, such as is called for by this special demurrer.   It objects that it does not appear whether the property is for a right of way or side-track or connections and turnouts; but all of these are parts of the railroad, and a right of way is essential whether a main line, a side-track, a connection, or a turnout is to be laid upon it.   Besides, this landowner entered into the assessment without objection, appointed an appraiser to take part in having an award made, and received the amount thus awarded.   While, under the statute, it may be compelled to return a portion of the money if the jury should find less than the assessors awarded (Civil Code, §4680), it was apparently satisfied with the award and entered no appeal, and it can hardly be said that it had no sufficient notice of the purpose for which the assessment was had.

3. On motion of the condemnor the witnesses were ordered to be excluded from the court-room when not testifying. The defendant's counsel requested that its president and vice-president be allowed to remain in the court-room to assist in the trial, stating that the president was manager of the company's office and business affairs, and that the vice-president was manager of its manufacturing plant, and that it was necessary to have both present to assist in the trial of the case. The court inquired if both would be used as witnesses, and, being informed that they would, refused to grant the request, and required the defendant to elect which should remain, the other being sent out of the court-room. A ground of the motion for a new trial complains of this ruling. This was a matter which rested to a considerable extent in the sound discretion of the presiding judge, and there is nothing in the case to indicate that he abused his discretion.

4. While it may have been unnecessary for the court to charge the jury on the subject of the right of the company to exercise the power of eminent domain, the rulings already made, showing that the defendant could not introduce that issue into the present case, make such a charge harmless to the defendant.

5. The court gave to the jury the following charges: "Damages are given as compensation for an injury done; or, in other words, for the property taken, or damaged; and generally this is the rule where the injury is of such a character as can be estimated in money. If the injury be small, or the mitigating circumstances be strong, nominal damages only are given." "If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong-doer." These charges embodied legal propositions relevant to a suit for a tort, but not to the determination of the amount to be awarded for the exercise of the power of eminent domain. If land is lawfully condemned for the right of way of a railroad, such condemnation and the taking and lawful use of the right of way under it do not constitute a tort. The measure of damages or the amount to be awarded to the landowner in such a case as this includes two elements: first, the value of the property taken or used (or the direct damage done); second, the consequential damages to the property not taken. As

against the value of the property taken, there can be no reduction on account of any consequential benefit which may arise from the construction or operation of the railroad by the corporation, if any. If there be consequential damages to the property not taken, from them should be deducted the consequential benefits, if any, to be derived by the owner from the operation of the franchise by the railroad company, or by the carrying on of the business of the company; provided the consequential benefits assessed shall in no case exceed the consequential damages assessed. Civil Code, §4675. The doctrines of mitigating circumstances, nominal damages, and imaginary or possible results of a tortious act have no application to such a case. Where it is claimed that consequential damages will result to that part of the property which is not taken, of course such damages must not be merely imaginary or possible, but it must be made to appear to the jury that they will naturally arise as a consequence of the exercise of the right of eminent domain or the operation of the franchise or the carrying on of the business. But this is a different thing from submitting a case of the character of the present one to the jury with instructions appropriate to an action for a tort; and while the presiding judge elsewhere in his charge referred to the value of the land taken and consequential damages, we can not say that no injury was done by reason of the charges referred to above. The jury found a verdict for a single amount, considerably less than that which had been awarded by the assessors. They did not mention separately the value of the land and consequential damages, and we can not say with certainty whether the amount found by them was intended to include any consequential damages or not. But certain it is that where the question of finding consequential damages was involved, references to mitigating circumstances and the finding of nominal damages were calculated to lead the jury to infer that they might reduce the damages which otherwise would be found, because of such mitigating circumstances. What they might deem mitigating circumstances in a condemnation proceeding, which would lessen the consequential damages that the landowner would be entitled to recover, we do not know. Perhaps they might have considered that because a street and suburban railroad might be quite convenient to people living in the suburb, or because it might be difficult for the railroad company to obtain another route that would

serve it as well, or because the defendant had a considerable amount of land, or because of a number of things which might be suggested, there existed circumstances which the jury could find were mitigating in character, so as to lessen the right of the landowner to recover; and the reference to nominal damages and to tortious conduct, when the lawful exercise of the right of eminent domain is not tortious conduct, whereby the jury might have inferred that because there was no tort there should be little or no recovery, was such material error as necessitates a new trial.

6. The court charged as follows: "Upon the condemnation and payment of damages, where the condemning corporation shall become vested with such interest in the property taken as may be necessary to enable the corporation to exercise its franchise, or conduct its business, whenever the corporation shall cease to use the property taken for the conducting of its business, said property shall revert to the person from whom taken, or his heirs, that is to say, gentlemen of the jury, that in condemnation proceedings, such as you are now considering, the actual fee, the absolute ownership of the land, does not go to the condemning railroad company, but its use and occupation for railroad purposes passes to it for the duration of its charter, in this case conceded to be 101 years." This was not a strictly accurate statement of the law. The railroad company might renew its charter without forfeiting its previously acquired rights of way, or it might have a successor or assignee who would be entitled to continue the use for railroad purposes. The right acquired would not necessarily and absolutely terminate with the life of the present charter. Whether this inaccuracy might have required a new trial, were there no other error, need not be decided; but as a new trial is granted on other grounds, it will doubtless be avoided in charging again.

7. It was contended that the court erred in refusing a request to give the following in charge: "The defendant is entitled to recover from the Georgia Railway & Electric Company the fair market value of the property taken, the land and also the clay in the land, if there be any, as such value may appear from the sworn evidence in the case." There was no error in refusing this request. So far as the land taken was concerned the fair market value was the measure. In determining such value the clay which formed a part of the land was a legitimate subject for consideration by the

35

jury. Land containing valuable clay deposits may be of greater market value than if it did not do so. But the land and the clay in the land constitute one subject, and there can not be a recovery both for the land as such and also for the clay in the land. Both are to be considered in determining the value of the land, but there should not be a recovery for each as a separate subject-matter.

The charge of the court to which exception is taken in the 15th ground of the motion for new trial was in substantial accord with what has been said, except that it informed the jury that if they believed from the evidence that there were clay deposits on the land they might consider that in making up their estimate of the value of the land. It would have been more accurate to have informed them that if they believed from the evidence that there were valuable clay deposits upon the land they should take that fact into consideration in estimating the value of the land.

8. There were several other grounds of the motion for a new trial, some of which related to rulings upon the admission of evidence and some to the charge of the court; but under the evidence and in the light of the entire charge, they furnish no ground for a reversal.

Complaint was also made that the verdict was contrary to law, on the ground that it was against the "Georgia Railway Company," there being no such party to the suit. There were only two parties to the suit, the Atlanta Terra Cotta Company and the Georgia Railway & Electric Company. As a new trial will be granted on other grounds, we do not deem it necessary to say more concerning this objection to the verdict than that the next will likely be more formal.          *Judgment reversed. All the Justices concur.*