PALMER *v.* ATLANTIC ICE & COAL CORPORATION *et al.*

No. 9531.   February 15, 1934.

*Pierce Brothers,* for plaintiff.

*Spalding, MacDougald & Sibley, Hull, Barrett & Willingham, Curry & Curry, Hamilton Phinizy,* and *Lee, Congdon & Fulcher,* for defendants.

BECK, P. J. Without passing upon the holding of the judge that the contract entered into on July 27, 1932, between the ice manufacturers and dealers, is of itself legal, this court is of the opinion that in all other respects the rulings of the judge were correct, and the result reached was right. It is supported both by decisions by this court upon the principles involved in this case, and by the decisions of other courts. In Bohn Mfg. Co. *v.* Hollis, 54 Minn. 223 (55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. R. 319), the Supreme Court of Minnesota said: "No case can be found in which it was ever held that, at common law, a contract or agreement in general restraint of trade was actionable at the instance of third parties, or could constitute the foundation for such an action. The courts sometimes call such contracts 'unlawful' or 'illegal,' but in every instance it will be found that these terms were used in the sense, merely, of 'void' or 'unenforceable' as be-

tween the parties; the law considering the disadvantages so imposed upon the contract a sufficient protection to the public." The Georgia statute on the subject of contracts against public policy is as follows: "A contract which is against the policy of the law can not be enforced; such are contracts tending to corrupt legislation or the judiciary, contracts in general in restraint of trade, contracts to evade or oppose the revenue laws of another country, wagering contracts, contracts of maintenance or champerty."

It may be that the contract in question can not be enforced; but no one is seeking to enforce it. It is a contract to which the plaintiff is not a party. It may be a contract which under the common law is unenforceable; but that does not give a third person not a party to the contract the right to enjoin it. In *Weed* v. *Gainesville &c. R. Co.*, 119 *Ga.* 576 (46 S. E. 885), it was held: "The State, the stockholders, and the parties alone could attack the contract as being ultra vires or in restraint of trade. Bondholders could not do so." In the opinion it was said: "The construction of the Gainesville Railroad did not lessen or increase, but created competition where none previously existed. But if the geographical situation or character of business transacted had made the Georgia and the Gainesville competing roads, the State, the stockholders, or the parties alone could have attacked the contract of March 31, 1883, as being ultra vires, or in restraint of trade. Bondholders are not authorized to act as guardians for the public or the parties, in having such a contract set aside or declared to have been illegal; certainly not in a case where the bondholder prays that the subscriber to the stock under such contract be held liable for the unpaid subscription. Civil Code, §§ 5800, 3668." In *Atlanta Terminal Co.* v. *American Baggage &c. Co.*, 125 *Ga.* 677 (54 S. E. 711), among others was the allegation that the contract was forbidden by the constitution of this State, article 4, section 2, paragraph 4 (Code, § 6466), because the effect of the contract was, and the same was intended to have the effect, to defeat or lessen competition in business and to encourage. monopoly; and with reference to that issue this court, by Justice Atkinson, said: "Without a violation of the right of the plaintiff company it certainly had no individual cause of complaint, no matter how flagrant may be the wrong to the prospective passenger. It is unnecessary to consider whether the contract between the two defendants is violative

of the constitution of the State of Georgia, or is void for any other reason; because if the operation thereunder between those two companies does not violate any right of the plaintiff, the illegality of the contract and the operations of the two defendant companies thereunder are matters of no concern to the plaintiff. It would be in the position of one having no wrong to redress." In a concurring opinion Justice Lumpkin said: "If a railroad company violates its public duty to the injury of the traveling public, an action for damages will lie by a proper party plaintiff so injured, or remedy may be had by injunction or mandamus in a proper case; or probably the attorney-general might proceed on behalf of the public. But this need not be discussed in the present case. The action here is not by one claiming to have been a passenger, or who sought to become a passenger; nor is it by any one shown to have a right to proceed on behalf of the public. It is by a transfer or hauling company which desires equal rights as to claim-checks with another transfer or hauling company. Relatively to the plaintiff no duty to issue claim-checks is shown." In 41 C. J. 199, it is said: "At common law, a suit by the State to enjoin a combination or conspiracy in restraint of trade, or a combination which tends to create a monopoly, is brought by the attorney-general in behalf of the State." It is to be noted that at the common law contracts in restraint of trade were unenforceable, just as they are unenforceable under our statute; but we think that it is clearly deducible from the authorities which we have quoted (and there are many others that could be cited laying down the same rule) that a mere member of the public can not bring a suit to enjoin it.

Great stress is laid by counsel for the plaintiff on *Brown & Allen* v. *Jacobs Pharmacy Co.,* 115 *Ga.* 429 (41 S. E. 553, 57 L. R. A. 547, 90 Am. St. R. 126); but that case differs in material particulars from the present case. One essential particular wherein it differs is that the contract and alleged conspiracy there attacked was directed particularly against the complainant, the Jacobs Pharmacy Co. That is to be seen in this excerpt from the statement of facts: "The local concern [Atlanta Retail Druggists Association] put in operation a scheme to prevent the Pharmacy Co. from being able to buy goods with which to conduct its business. The main features of that scheme were, that the local concern, by circulars, letters, or otherwise, undertook to notify wholesalers and

manufacturers throughout the country that the Pharmacy Co. was an aggressive cutter, and to request the persons or concerns addressed not to sell it any more goods; further, to require all salesmen representing the manufacturers or wholesale houses to procure from the local association a card, in order to procure which such salesmen had to sign an agreement not to sell the Pharmacy Co. any goods; and another part of the scheme was to give the manufacturers and wholesalers to understand that, unless they refused to sell the plaintiff any goods, the members of the local association would not buy any more goods from them." It is true that in the present case the plaintiff alleges, in general terms, that the purpose of this contract attacked as illegal and in restraint of trade was to injure him; but this is a mere conclusion of the pleader, for no specific facts are alleged to show this; whereas in the *Jacobs* case, as will be seen from the quotation made above, specific acts directly aimed at the Jacobs Pharmacy Co. were set forth.

It follows that the court was right in holding that the plaintiff could not maintain his suit for injunctive relief against the contract. The rulings in headnotes 2 and 3 require no elaboration.

*Judgment affirmed. All the Justices concur, except Gilbert, J., disqualified.*