36292.   SOUTHERN RAILWAY COMPANY *v.* MILLER.

Decided November 30, 1956.

*Claude V. Driver, Matthews, Maddox, Walton & Smith, John W. Maddox,* for plaintiff in error.

*Don B. Howe,* contra.

GARDNER, P. J. Since we are deciding that the judgment should be reversed on the special grounds, we will not discuss the evidence as related to the general grounds, as the facts may be different in another trial, should another trial be held.

■ Special ground 1 raises the issue as to whether the court erred in admitting the testimony, over objections of counsel for the plaintiff, of the witness Charlie Grace. Since this is so important, we feel that we should quote all of this special ground. Special ground 1 assigns error as follows: "Because the following material evidence was illegally admitted by the court to the jury, over the objection of movant, to wit: 'As to what was the reasonable market value of that sand at that place, I answer that what we were figuring on getting for it when it was sold would be $4 a ton, and what we were going to pay for it was relative. As to what we were going to pay for it, I answer that we had arrived at a figure with Mr. Miller that would guarantee him $100 a month for this piece of property, to get sand and put up a plant on it, or 50 cents a ton for each ton of sand, whichever was greater. We were figuring on a ten-year proposition.' (a) Movant objected to the evidence as soon as and at the time it was offered, and then and there urged before the court the following grounds of objection: Counsel for defendant asked the following question: What was a reasonable value of the sand? Mr. Maddox: 'We object to that on the ground that the landowner is not permitted to show by piecemeal the value of the various elements that go to make up the full market value of the land. The only thing that is involved is the fair market value of the land. He can show what the nature of the land is and what various elements go to give it value, but under the law he is not permitted

to give a separate value of all the separate items which go to make up the land so as to get the aggregate. There has not been a ruling in our State courts on that, but our Federal courts have universally held that. We say that this witness would not be able to testify as to the value of the sand deposits. If he knows, he can state the fair market value of the land as a whole, taking into consideration the sand that was there, but the ultimate question is, what was the fair market value of the land, and that's the only thing he could be permitted to testify.' (b) The defendant, Mrs. Maude Miller, offered such evidence. (c) The court overruled the objection and admitted the evidence as follows: The court: 'I make this ruling, that inasmuch as under our State law the jury is permitted to consider the land, the damage to the land, for any and all purposes, it might be appropriate. I overrule your motion in this way, by saying that this evidence is admissible as a circumstance to prove the value of the whole.' (d) Said evidence objected to was immediately preceded by the following evidence: 'We estimated it to be between 1000 and 1200 yards of sand there. A cubic yard I believe is 2640. There would be approximately a ton and a quarter to the yard. (e) The evidence was material, prejudicial and hurtful to the condemnor for the reason that it shows a separate value of only one of the many elements that go to make up the fair market value of the property condemned, is part of a pattern of testimony which permits the condemnee to give a separate value to each of such elements so as to get an aggregate of the values of all of such elements, although the value attributed to some of the elements necessarily excludes the value given to other elements, since some uses of the property necessarily exclude other uses, and such aggregation of the separate values of the various uses of the property is not the proper way of proving the value of the land condemned. To permit the value to be arrived at by such a method, allows a higher value to be placed upon the property than the fair market value thereof. (f) The name of the witness whose testimony is alleged to have been illegally admitted over said valid objection is Charlie Grace. (g) Movant avers that the inadmissibility of the evidence was beyond doubt."

We call attention to United States *v.* Phillips, 50 Fed. Supp. 454, which originated in Georgia. In that case Judges Under-

wood, Russell and Lovett, held: "The compensation to be awarded for land condemned by the United States is not to be determined by adding the values of various uses to which the land taken is adapted." See also *Atlanta Terra Cotta Co. v. Georgia Ry. &c. Co.,* 132 *Ga.* 537 (64 S. E. 563). We have read carefully the testimony of the witness Grace and we find that he never testified as to the market value of the 3.97 acres of land at the time of the condemnation. We understand that all elements and uses of the land may be taken into consideration to determine the market value of the land taken and the consequential damages to the land not taken. However, under this sort of procedure, a witness may not be permitted to testify separately as to the value of each element. From the testimony of the witness Grace it will be noted that it was only a mathematical calculation to determine that the said deposit was worth from fifty to sixty thousand dollars, not at the time the land was sought to be condemned, but previous to that time. While we have called attention to *Atlanta Terra Cotta Co. v. Georgia Ry. &c. Co.,* supra, and quoted therefrom, we realize that the case was reversed, perhaps, on another principle of law. Nevertheless the Supreme Court, during the course of the opinion stated that the fact had been established that land containing clay deposits (the same as sand deposits in the instant case) may be of greater market value than land without clay deposits, but that the land and the deposits constitute one subject matter and there cannot be a recovery for the land as such, and also for the clay deposits. For the trial court to deal with the sand deposits and their value covering the time mentioned by the witness Grace, was erroneous, and the court committed reversible error in allowing this evidence to be considered by the jury.

■ Special ground 2 assigns error as follows: "Because the following material evidence was by the court illegally admitted to the jury and permitted to remain in the record and before the jury for consideration, over the motion of the movant to exclude the same. 'As to what was the reasonable market value of that sand at that place, I answer that what we were figuring on getting for it when it was sold would be $4 a ton, and what we were going to pay for it was relative. As to what we were going to pay for it, I answer that we had arrived at a figure with Mr. Miller that

would guarantee him $100 a month for this piece of property, to get sand and put a plant on it, or 50 cents a ton for each ton of sand, whichever was greater. We were figuring on a ten-year proposition. So we left there and didn't do anything till the end of 1953, Mr. Mendelson decided to retire and wanted to sell me the plant, then I decided that I would need it down there, all the small towns down there and everything, with no competition, to put the plant down there, and I got to investigating it and got ready to draw up the contract and found out that the railroad was going to build a railroad right across this dam. That's the reason I didn't go ahead with it, because I found out that the railroad was going to condemn it. I was down there sometime in December last year. As to whether our understanding that we had with him was made back there in 1951, I answer, 'No', '53—'Yes', but we didn't take it. As to whether he made us an offer in 1951, I answer, 'No', that was what we offered him, to put the plant down there. We made an offer to him. As to whether he didn't take it, I say, we decided not to put the plant there at that time. So actually there was no agreement, because we didn't go through with it at that time. In 1953, at the end of '53, when Mr. Mendelson decided to quit the business, I was going to take the plant and move it down there, but when we went into it and Mr. Miller told me about the survey, that they were going to put the railroad there, I was advised not to move the plant there if the railroad was going to take the right-of-way. Actually I and Mr. Mendelson never did enter into any formal agreement with Mrs. Miller. All the business was done with Mr. Miller. As to whether we had any formal agreement with him, I answer we just agreed that we would do this if we saw fit to put the plant there. We did not put it there.'

"(a) Movant moved to exclude the evidence as soon as and at the time it was offered, and then and there urged before the court the following grounds of such motion to exclude: Mr. Maddox: 'I move to exclude all the testimony about this conversation and about these negotiations because they didn't culminate in a contract; there was nothing more than an opportunity or an offer for this to be done, and an offer not acted upon is not any basis for placing a value on this element of the land.' (b) The defendant, Mrs. Maude Miller, offered the evidence sought to be

excluded. (c) The court overruled the motion to exclude and permitted such evidence to remain in the record and before the jury for consideration. (d) The evidence was material, prejudicial and harmful to movant because it permitted the jury to consider, as a basis for arriving at the fair market value of the property taken and at the amount of consequential damages sustained, mere negotiations for a particular use of the property which never resulted in a contract, the making and consummation of which contract was too remote and speculative to form a proper element of such value and damages. (e) The name of the witness whose testimony is alleged to have been illegally admitted and permitted to remain in the record and before the jury for consideration is Charlie Grace. (f) Movant avers that the inadmissibility of the evidence was beyond doubt."

This evidence was too speculative and uncertain to prove the actual value of the plaintiff's land at the time of the condemnation. See *Selma, Rome & Dalton R. Co. v. Keith*, 53 *Ga.* 178, and *Palmer* v. *Atlantic Ice & Coal Corp.*, 178 *Ga.* 405 (173 S. E. 424, 92 A. L. R. 176). In Sharpe *v.* United States, 191 U. S. 341, 349 (24 Sup. Ct. 114, 48 L. ed. 211) the United States Supreme Court said: "Oral and not binding offers are so easily made and refused in a mere passing conversation, and under circumstances involving no responsibility on either side, as to cast no light upon the question of value. It is frequently very difficult to show precisely the situation under which these offers were made. In our judgment they do not tend to show value, and they are unsatisfactory, easy of fabrication and even dangerous in their character as evidence upon this subject." The defendant's willingness to accept the offer for the sand deposit was not evidence of the value of the land. Such testimony was a self-serving declaration by the defendant and was not admissible. This special ground shows reversible error.

■ Special ground 3 assigns error: "Because the following material evidence was illegally admitted by the court to the jury, over the objection of movant, to wit: 'As to the statement that I can compare it with what we manufactured in Rome on the plant, I say, I have an automatic block machine that would turn out 3200 8 by 16 by 8. That was the one we were going to move down there. As to how much that is in sand, the blocks

weigh in the neighborhood of 40 pounds, approximately two tons of sand per hundred blocks. As to how many blocks I say an average day's run would be, I answer, thirty-two hundred, which would be 64 tons of sand a day. That would be $32. As to how many days we proposed to run a week, I say, five days, if the demand for the blocks stood up. This machine would use 64 tons a day, approximately.'

"(a) Movant objected to the evidence as soon as and at the time it was offered, and then and there urged before the court the following grounds of objection: (Mr. Howe asked the witness the following question on direct examination) : 'In the course of an ordinary day's run with this particular mill that you proposed to put at this place, what would have been the average take of sand per day, in tons?' Mr. Maddox: 'I object to that on the grounds I have stated, and on the further ground that it could be nothing more than conjectural, since we are talking about a business that never existed, at a time we know not when, we don't know what the lasting power of this business would be, whether it would be a paying business over a long period of time or a short period of time, we don't know what the market of the product would be, therefore, the quantity of sand that would be used by this nonexistent business can be nothing more than conjectural or speculative and cannot be anything upon which the jury could arrive at the value of the sand to be consumed, or the fair market value of the land itself.' (b) The defendant, Mrs. Maude Miller, offered the evidence objected to. (c) The court overruled the objection and admitted the evidence. (d) The evidence was material, prejudicial and harmful to movant because the evidence of the future output of the proposed concrete-block plant, and the money defendant was to receive on account thereof, was too remote, contingent and speculative to form a proper basis or element of the fair market value of the property taken and consequential damages sustained. (e) The name of the witness whose testimony is alleged to have been illegally admitted over valid objection is Charlie Grace. (f) Movant avers the inadmissibility of the evidence was beyond doubt."

In *Central Georgia Power Co.* v. *Mays*, 137 *Ga.* 120, 124 (72 S. E. 900), the Supreme Court said: "Remote or merely speculative or possible damages are not allowed in considering . . .

[the value of the land taken or consequential damage to the land not taken]." The trial court committed reversible error in overruling this assignment of error.

■ Special ground 4 assigns error as follows: "Because the following evidence was illegally admitted by the court to the jury, over the objection of movant: 'As to what grading was done, I say, twenty-eight hundred and twenty some odd . . . Mr. Miller spent $2,820.'

"(a) Movant objected to the evidence as soon as and at the time it was offered, and then and there urged before the court the following grounds of objection: Mr. Maddox: 'I object to any testimony concerning the cost of the grading as being irrelevant and immaterial. He can testify as to what has been done or what the nature of the land is, and if he knows what the fair market value of it is. I think he has shown that by his testimony.' (b) The defendant, Mrs. Maude Miller, offered the testimony objected to. (c) The court overruled the objection and admitted the evidence, after statement of counsel for said defendant, as follows: Mr. Howe: 'I want to show consequential damages. I expect to show that we spent $2800 grading it for the purpose of having a motel. We expect to show that the dam was removed and the railroad was jammed up against it and made it valueless.' The court: 'I will admit it for that purpose.' (d) The evidence was prejudicial and harmful to the movant because it permitted the jury to consider and use, in arriving at the value of the land taken and the consequential damage sustained on the land retained, an improper element of value and damage, and an improper method of proving such value and damage, calculated to cause the jury to arrive at a higher value and consequential damage than was correct. (e) The name of the witness whose testimony is alleged to have been illegally admitted over valid objection is Howard Shealy. (f) Movant avers that the inadmissibility of the evidence was beyond doubt."

To our minds this evidence was not admissible because it sought to value the consequential damage to the land not taken by specifying a particular amount ($2,820 for grading done by a prior owner). The record shows that the defendant subsequently purchased the property on which the grading was done for $3,300 for 40 acres. This included the 3.97 acres here involved (we

might add here that the selling price is not necessarily the proper market value of the land). The question of what the grading cost several years prior to the acquisition of the property by the defendant does not properly illustrate the amount of consequential damage to the property not taken. The consequential damage which resulted from the taking of the 3.97 acres is to be determined by the decrease in the market value of the land not taken. The decrease of the consequential damage, if any, to the land not taken as a result of that which was taken, is the decrease in the market value of the land not taken for all purposes. To specify one particular item of work on the property not taken is not the proper rule. The contract for grading may have been worth $2,820 or more, or less, but such cannot be used solely as a guide to determine the consequential damages as a whole to the land not taken.

■ Special ground 5 assigns error as follows: "Because the following material evidence was illegally admitted by the court to the jury, over the objection of movant, to wit: 'I had dealings with Mr. Grace about the sand. After I found out the railroad was doing what they had done, I thought we would do something about the sand, and I thought I would lease it to Mr. Grace. He said he would lease it for ten years at $100 a month or 50 cents a ton.'

"(a) Movant objected to the evidence as soon as and at the time it was offered, and then and there urged before the court the following grounds of objection: Mr. Maddox: 'I object to that on the same ground that I did when Mr. Grace testified about the same matter, that it is not a proper element of damage to show what various items themselves are valued at, and of course this testimony leads up to that. It is the fair market value of property as a whole and not the aggregate of the separate parts. I further object to this line of testimony and that which has already been given by Mr. Miller to the negotiations with Mr. Grace on the ground that it never was consummated and there never was a contract actually made or acted upon.' (b) The defendant, Mrs. Maude Miller, offered the evidence objected to. (c) The court overruled the objection and admitted the evidence, as follows: The court: 'I will let it in under the same conditions and for the same reason stated with reference to

the testimony of Mr. Grace.' (d) The evidence was material, prejudicial and harmful to the movant because it shows a separate value of only one of the many elements that go to make up the fair market value of the property condemned, is a part of a pattern of testimony which permitted the condemnee to give a separate value to each of such elements so as to get an aggregate of all the values of all of such elements, although the value attributed to some of the elements necessarily excludes the value given to other elements since some of the uses necessarily exclude other uses, and such aggregation of the separate values of the various uses of the property is not the proper way of proving the value of the property condemned. To permit the value and damages to be arrived at by such a method, allows a higher value to be placed upon the property than the fair market value thereof, and higher damages to be assessed than is correct. The testimony further permitted the jury to consider, as a basis for arriving at the fair market value of the property taken and at the amount of consequential damages sustained, mere negotiations for a particular use of the property which never culminated in a contract, the making and consummation of which contract was too remote and speculative to form a proper element of such value and damages. (e) The name of the witness whose testimony is alleged to have been illegally admitted over valid objection is Henry Miller. (f) Movant avers that the inadmissibility of the evidence was beyond doubt."

We have dealt with this principle in dealing with the foregoing special grounds. This special ground is meritorious. In support of this contention counsel for the defendant cites the following: Code §§ 36-504, 36-505, 36-506; *Young* v. *Harrison*, 17 *Ga.* 30; *Flemister* v. *Central Georgia Power Co.*, 140 *Ga.* 511 (79 S. E. 148); *Hall County* v. *Smith*, 178 *Ga.* 212 (172 S. E. 645); *Chattahoochee Valley Ry. Co.* v. *Bass*, 9 *Ga. App.* 83 (70 S. E. 683); *City of Elberton* v. *Hobbs*, 121 *Ga.* 749 (49 S. E. 779). We have read these citations set out and urged by counsel for the defendant as to why judgment should be affirmed. We do not think that any of these apply to the evidence in the instant case sufficiently to demand the affirmance of the judgment of the court.

In the dissenting opinion filed in this case to special ground 1, we call attention to the fact that in view of this record and the

amendments, all of the special grounds necessarily have to be considered together. It is our opinion that it is not feasible to take one ground and dissent thereon without dissenting on the other special grounds, since they are so interrelated. The author of the dissenting opinion realizes this, we think, when he states that while his dissenting opinion is pointed directly at special ground 1, it might with equal force apply to all the special grounds. Our attention has been called, in the dissenting opinion, to *Housing Authority of the City of Savannah* v. *Savannah Iron &c. Works,* 90 *Ga. App.* 150 (82 S. E. 2d 244). We have re-read this case carefully and it is our opinion that the facts and questions there set out and considered are so dissimilar to the facts and the decision in the instant case that there is practically no similarity between that case and the instant case.

*Judgment reversed. Carlisle, J., concurs. Felton, C. J., and Quillian, J., concur specially. Townsend and Nichols, JJ., dissent.*

FELTON, C. J., concurring specially. I concur in the ruling and judgment on special ground three of the amended motion for a new trial.

I do not think that special grounds one and two are meritorious as to the objections made to the testimony in view of the statements of the judge. I do not think that the objections urged to the evidence shown in special grounds four and five are meritorious. I express no opinion as to whether other objections might have been meritorious.

QUILLIAN, J., concurring specially. I agree with what is said in the dissenting opinion insofar as it relates to special ground one of the amended motion for new trial, but do not believe it applicable to special grounds two and three. It is my opinion that special grounds two and three show reversible error, and for this reason I concur in the judgment of reversal.

TOWNSEND, J., dissenting. What is said herein is directed to special ground 1 specifically, but I believe it is equally applicable to all the special grounds objecting to admission of testimony offered for the purpose of showing consequential damage to portions of the tract of land not condemned. The objection in ground 1 is to testimony relating to the market value of sand which the defendant had proposed to sell to a concrete-block

maker and which was washed away as the result of the railroad removing a dam over the creek. The objection was that the witness could not testify as to the value of sand deposits, but only to the "market value of the land as a whole, taking into consideration the sand that was there." The court stated: "Inasmuch as under our State law the jury is permitted to consider the damage to the land for any and all purpose, it might be appropriate. I overrule your motion in this way, by saying that this evidence is admissible as a circumstance to prove the value of the whole." In addition to this the court charged as follows: "The measure of consequential damages, if any, to the adjoining property of the landowner as a result of the condemnation of the land, is the lessening of the value of such adjoining property, measured by the difference between the value of such property immediately before the condemnation and immediately after the condemnation." The testimony having been admitted for a limited and proper purpose, the jury could not possibly have been confused into believing that it could take the value of the property for each purpose and add the total possible values together in reaching an aggregate sum in excess of market value, as contended. The court here tracked the law laid down in *Atlanta Terra Cotta Co. v. Ga. Ry. Co.*, 132 *Ga.* 537, 546 (64 S. E. 563) relied on by the plaintiff in error. It was there held that "there can not be a recovery both for the land as such and also for the clay in the land," but this ruling was related to a request to charge that the plaintiff might recover both the value of the land and the value of the clay deposits. In the trial of the case evidence as to the market value of the land, and also as to the market value of the clay deposits, was admitted without objection. In no other way can the jury receive a full picture from which they may determine actual damages based on decrease of market value. In this case one part of the tract was contended to be valuable for sand deposits; another part was contended to be valuable as a motel site. The plaintiff may desire to prove his consequential damages by one witness as to the sand deposits, by another as to loss of commercial uses. These are the facts by which the opinion evidence as to market value must be determined, and to say that they are not admissible in evidence for this limited purpose and under proper instructions of the court is to say that the witness

may only give his conclusion as to value without stating facts from which value must be determined. This would make the trial of condemnation cases almost impossible. Also, it is contrary to the ruling in *Housing Authority of the City of Savannah* v. *Savannah Iron &c. Works*, 90 *Ga. App.* 150 (82 S. E. 2d 244) wherein this court allowed the plaintiff to plead and prove many elements of damage not entering directly into market value in order to illustrate his loss, although recovery could not be predicated directly thereon. The rule is laid down in *Central Georgia Power Co.* v. *Preston*, 137 *Ga.* 347, 348 (73 S. E. 505) that in estimating market value "all the capabilities of the property and all the uses to which it may be applied or for which it is adapted are to be considered . . . in estimating its value." See also *Central Ga. Power Co.* v. *Mays*, 137 *Ga.* 120 (72 S. E. 900) ; *Elbert County* v. *Brown*, 16 *Ga. App.* 834 (86 S. E. 651). I accordingly think this testimony was admissible for the purpose to which it was limited by the court, and that it shed light upon proper valuation of consequential damages.

I am authorized to say that Nichols, J., concurs in this dissent.