73028. D'YOUVILLE RECREATIONAL ASSOCIATION, INC. et al v. DeKALB COUNTY.
(352 SE2d 181)

BEASLEY, Judge.

DeKalb County condemned a portion of the property owned by the D'Youville Recreational Association for a temporary construction easement on July 21, 1981. The county filed a condemnation petition, published the proposed condemnation in the Decatur-DeKalb News/ Era Newspaper, and deposited $5,500, the estimated just compensation for the property, with the clerk of the superior court. The Association appealed to the superior court for a jury trial on all issues of the proceeding including just and adequate compensation. Seventy-two condominium owners in the D'Youville condominiums sought to intervene prior to trial, contending that they had either an easement or an undivided fee interest in the condemned property. The trial court granted the motion to intervene but dismissed their claims at trial. The jury awarded the Association $20,000. It and the condominium owners appeal from the judgment entered on the verdict.

1. The appellants contend that the trial court erred in excluding

from evidence certain exhibits which they claim established the interest of the individual intervenors in the property, and that the court further erred in granting the condemnor's motion to dismiss and strike the intervenors' claim.

Appellants claim that their Exhibits 5, 7 and 8 demonstrate the existence of either an easement or an undivided fee ownership interest by the intervenors insofar as they are owners of the condominiums in the development. At trial, counsel for the county went through each of these exhibits in an attempt to prove that the intervenors had no interest in the property in question. Exhibit 8 is the declaration of condominium and is dated August 28, 1973, and counsel argued that the property description contained there does not include any portion of the property in question, that the developer reserved the right to submit additional portions of property to condominium ownership, and that the property which is described in "Exhibit A" contains a property description in which the condemned property is included.

Exhibit 5, dated the same day, is a declaration of easement over the property submitted to condominium ownership and does not contain the property in question. Counsel argued that the easement was granted to benefit all of the property owned by the developer to permit access across phase I of the development.

He contends that Exhibit 9, also dated August 28, 1973, conveys the property in question to the Association, and that by Exhibit 7, dated July 13, 1978, all of the interests of phase I, phase II, phase III, and the Association are merged into one condominium development. This document describes two types of property: submitted property (description attached as Exhibit A) and additional property (description attached as Exhibit B). Exhibit A excluded certain property. Counsel showed the court that the property in question is excepted from both the submitted property and the additional property and therefore, at the time of the taking, the individual owners had no interest in the property which was condemned by the county. Counsel argued that the property in question did not become a part of the overall condominium development until certain conveyances were made in 1984.

The trial court examined all of the exhibits in question and apparently agreed with appellee's counsel that the intervenors had no interest in the property in question. We have examined the relevant documents and find that the trial court did not err in refusing to allow them into evidence as they were not relevant, and that the court therefore did not err in dismissing the intervenors.

2. The next claim of error relates to a jury charge, which must be set in context.

The general contractor who developed the condominium project testified both as an expert and in connection with his particular

knowledge of the property based on his interest in it. In connection with the consequential damages, he testified that the presence of the new guardrails and the elimination of the shrubbery and the changing of the grade of the driveway affected the value. The difference in the before and after value was $150,000, he said.

To lessen the damages and restore the property to its condition before the taking would require raising the bridge to remove the hazardous condition caused by the County's changing the driveway's grade. He said that would cost approximately $125,000 and that he used this figure in determining value.

As to the landscaping, he was asked his opinion "as to the value of the landscaping that was taken, not what it would cost to replace it, but the value of what they ripped off." His opinion was that the value was $10,000.

The instruction given, which appellants excepted to, was not requested by either party, although condemnee had asked for one to the effect that the grade change reduced the market value of the remaining property and thus was an element of consequential damages. When the subject was being discussed in the charge conference, condemnee agreed that the jury be charged that the $125,000 for the bridge not be a separate item, in addition to the $150,000 claimed.

The court charged that the jurors "are not to consider the cost of reconstructing the bridge or landscaping the property in determining an amount of consequential damages, if any." Just prior thereto the court had instructed that, with respect to consequential damages, "it is the difference in the market value of the remaining property *in its circumstances* just before the time of the taking, compared with its market value *in its new circumstances* just after the time of the taking." And just after the charge excepted to, the court instructed that consequential damages could include those "caused by change in the grade of the road adjoining the property," which would be measured by the reduction in market value caused by the grade change. Later the court cautioned that remote or speculative damages were not allowed.

The instruction with respect to landscaping was not reversible error because there was no evidence of the cost of relandscaping anyway; the witness had only testified that the value of the landscaping taken was $10,000, and this separate value of one element in the consequential damages would not be allowed. *Southern R. Co. v. Miller*, 94 Ga. App. 701 (96 SE2d 297) (1956) (the value of the sand on the land, as separate from the value of the land itself, was not admissible because the land and the deposits constitute one subject matter).

As to the cost to cure the hazardous bridge condition left by the road grade change, on the other hand, the jury was improperly instructed. Although the court had just told the jury to take into ac-

count all the circumstances of the property before and after, it contradicted this correct charge by excluding from consideration the cost of "reconstructing," meaning correcting, the grade-damaged bridge. The hazard created by the condemnor, in other words, diminished the value of the remaining property by an amount which took into account as a factor the cost of eliminating the hazard. This concrete factor served as a basis for the opinion regarding value and removed it from the forbidden realm of the speculative.

Cost to cure the damage created by the condemnor was permitted to be considered by the jury in assessing consequential damages in *State Hwy. Dept. v. Augusta Dist. of North Ga. Conference,* 115 Ga. App. 162, 163 (b) (154 SE2d 29) (1967) (expense of moving a cabin on the remaining property to a useful location on it). "In determining market value of land taken or damaged in an eminent domain proceeding, . . . proof of all factors which an owner could reasonably urge upon a prospective purchaser which could tend to favorably influence the person" may be considered. *Macon-Bibb County &c. Auth. v. Reynolds,* 165 Ga. App. 348, 350-351 (299 SE2d 594) (1983). It was not the *value* of the bridge as damaged that was testified to and sought to be considered, but rather the cost of rectifying its condition, as an element in the determination of the after-taking value of the remaining land. Thus *Gaines v. Dept. of Transp.,* 140 Ga. App. 741 (231 SE2d 829) (1976) is not on point.

In *Dept. of Transp. v. Sequoyah Land Investment Co.,* 169 Ga. App. 20, 21 (2) (311 SE2d 488) (1983), the court found proper evidence "the increased development costs caused by the presence of the interstate." These costs related to a more circuitous routing of water and other utilities than would otherwise be necessary. They were admissible "for the purpose of showing what an ordinary buyer would take into consideration before purchasing condemnees' property on the date of the taking." Id. By the same token, then, a buyer of the condominium project would take into consideration the cost of correcting the hazard which jeopardized ingress and egress to the property.

We further conclude that the nature of the error in these circumstances requires reversal.

*Judgment reversed. Banke, C. J., Carley and Pope, JJ., concur. Sognier, J., concurs in the judgment only. Deen, P. J., Birdsong, P. J., and Benham, J., concur in part and dissent in part. McMurray, P. J., dissents.*

DEEN, Presiding Judge, dissenting.

I fully concur with all that is said in Division 1, but must respectfully dissent as to Division 2. While I agree that the cost of landscaping could not be recovered because there was no evidence of such

costs, I also believe that the jury was properly instructed "not to consider the cost of reconstructing the bridge or landscaping the property in determining an amount of consequential damages." "[A]ll elements and uses of the land may be taken into consideration to determine the market value of the land taken and the consequential damages to the land not taken. However, under this sort of procedure, a witness may not be permitted to testify separately as to the value of each element." *Southern R. Co. v. Miller*, 94 Ga. App. 701, 704 (96 SE2d 297) (1956); *Gaines v. Dept. of Transp.*, 140 Ga. App. 741 (231 SE2d 829) (1976). See also *Dept. of Transp. v. Willis*, 165 Ga. App. 271, 272-273 (299 SE2d 82) (1983), and *Dept. of Transp. v. Brooks*, 153 Ga. App. 386, 390-391 (265 SE2d 610) (1980), for discussions of the proper method of determining damages in condemnation cases.

I am authorized to state that Presiding Judge Birdsong and Judge Benham join in this dissent.

DECIDED NOVEMBER 25, 1986 —
REHEARING DENIED DECEMBER 18, 1986 —

*J. Corbett Peek, Jr., J. Garland Peek*, for appellants.
*Albert Sidney Johnson*, for appellee.