**GEORGIA KAOLIN CO.**

v.

**UNITED STATES.**

No. 14592.

United States Court of Appeals
Fifth Circuit.

June 23, 1954.

Rehearing Denied Aug. 5, 1954.

H. D. Russell, Macon, Ga., Walter J. Blenko, Pittsburgh, Pa., John B. Harris, John B. Harris, Jr., Macon, Ga., for appellant.

Roger P. Marquis, Attys., D. of J., Fred W. Smith, Washington, D. C., J. Edward Williams, Acting Asst. Atty. Gen., Jack J. Gautier, Asst. U. S. Atty., Macon, Ga., Perry W. Norton, Asst Atty. Gen., Frank O. Evans, U. S. Atty Macon, Ga., for appellee.

Before HOLMES and STRUM, Circuit Judges, and THOMAS, District Judge.

HOLMES, Circuit Judge.

This is an action against the United States for damages that resulted to appellant's lands while occupied by the Government and used as a part of Camp Wheeler in Twiggs County, Georgia, which camp was utilized in the training of soldiers during World War II. The jurisdiction of the court below rested upon a special jurisdictional act of June 19, 1948, 62 Stat. 566. The jurisdiction of this court rests upon Section 1291, Title 28 of the U.S.Code.

In October, 1940, the appellant leased to the City of Macon, Georgia, two certain parcels of land. At the time of entering into the lease, it was understood

between the parties thereto that the lease would be transferred to the United States and the lands used by it as a military training base. The contract of lease provided that the lessee would restore the premises to the same condition as that existing at the date of the lease, reasonable and ordinary wear and tear, and damage by the elements or by circumstances over which the lessee had no control, excepted; that all claims for damages to the leased premises were determinable according to the value thereof as of the date of the lease; that no such damage should be determined upon the basis of appreciated value occasioned by the use or development of said property or surrounding property by the lessee or sublessee; and that, if the same was transferred or sublet to the United States, the lessor would have the right to assert such claim for damages solely and exclusively against said sublessee.

Under the transferred lease, the United States took possession of said property during the latter part of October, 1940, and retained and used the same until February 15, 1947, when the lease contract was duly terminated. This suit was filed against the United States on May 30, 1949, alleging that it had used the lands for a maneuver area and firing range, and had caused the property to become impregnated with live shells and dangerous explosives to such extent that the plaintiff could not thereafter use the lands for mining purposes. The appellant further alleged that it had acquired said property for mining kaolin thereon, and that the Government had breached its contract by failing to restore the premises to their same condition as when entered. It is conceded that both tracts of land were acquired for kaolin, that the appellant is in the kaolin business, and acquired these lands in the belief that they contained kaolin. The appellant's evidence discloses that, in the particular section of Georgia wherein these lands are situated, the principal kaolin industry of the country exists and kaolin lands are very valuable.

There is ample and substantial evidence in this record to support the district court's findings of fact. The question of the measure of damages is one of law about which the parties sharply disagreed in the court below, and are still in disagreement. The appellant contends that it ought to be paid the full money value of the kaolin in the ground, arrived at in money per ton, on a comparable royalty basis; but we think that such a computation would involve too many conjectures, and too vague and contingent a method, to meet the reasonable certainty that the law requires in fixing damages for the breach of a contract. We agree with the appellee, as did the court below, that the tonnage and royalty basis for establishing damages to the appellant's land was not the legal method, but that the value at the date of the lease, contemplated by the parties, was the market value for any and all purposes and uses to which the lands could legally be put; and that, while the fact that the lands contained kaolin should be given weight, it should not be considered apart from other proper elements of value. Their kaolin content was simply one of the many elements that went to make up the value of the lands at the time of the lease.

It was conceded by the parties in the court below that the best and most valuable purpose for which the lands could be used, at the time of appellee's acquirement thereof, was the mining of kaolin. They were located in a kaolin section, and were bought and sold as kaolin lands, albeit to some extent as a matter of speculation. In arriving at the amount to which the appellant was entitled because of the government's breach of its contract to restore the lands to their former condition, the court below applied the same general principles as are applicable in condemnation cases, wherein the measure of compensation to be awarded the owner is the price which would be agreed upon at a voluntary sale between an owner, ready, able, and willing to sell, and a purchaser, ready, able, and willing to

buy, both being duly informed. In other words, the applicable test is the fair market value. How market value is to be determined depends upon a number of circumstances. 156 A.L.R. 1416.

In eminent domain proceedings, the existence of valuable mineral deposits in the condemned land constitutes an element which may be taken into consideration if and in so far as it influences the market value of the land. The reason for this rule is said to be that the measure of compensation in such cases is the market value of the land to be condemned, taken as a whole and with due consideration of all the components that tend to make its market value. This rule has been applied to limestone deposits, gold ore, fire clay, coal, stone, and sand and gravel, 156 A.L.R. 1416–1417; but there can be no recovery for both the value of the land and its mineral deposits as two separate items. Atlanta Terra Cotta Co. v. Georgia Ry. & Electric Co., 132 Ga. 537, 64 S.E. 563; U. S. v. 620.00 Acres of Land, etc., D.C., 101 F.Supp. 686; Orgel on Valuation, under Eminent Domain, page 544, rejecting the method of estimating the amount of stone in situ and multiplying this amount by a fixed price per unit; also citing Searle v. Lackawanna and Bloomsburg Railroad Company, 33 Pa. 57. In rejecting the method of multiplying the estimated amount of clay by a fixed price per unit, the conclusion is largely based on its speculativeness. In discussing this point, the court below said that whether or not the deposits would be mined and the royalties paid would depend upon the condition of the market, the uncertainty of the future, the demand for the product, "and many other elements, on and on, in the future."

Having concluded that the appellant was entitled to recover the difference between the value of the land at the time of the lease and its diminished value because of its use and the condition in which it was returned to the owner, the court below painstakingly endeavored to arrive at the fair market value of these lands as of the date of the lease in October, 1940, quoting from U. S. v. Savannah Shipyards, Inc., 5 Cir., 140 F.2d 863, upon the many elements that go to make up market value. We have carefully considered the court's findings and conclusions in this respect, and deem them to be correct and sound. They are free from reversible error. Accordingly, the judgment appealed from is affirmed.

Affirmed.