**UNITED STATES of America,**
**Plaintiff,**

v.

**116.00 ACRES OF LAND, MORE OR LESS, IN BENTON COUNTY, ARKANSAS, and Eli Leflar, et al., and Unknown Owners, Defendants.**

Civ. A. No. 474.

United States District Court
W. D. Arkansas,
Fayetteville Division.

March 9, 1964.

Charles M. Conway, U. S. Atty., Max Findley, Sp. Asst. to U. S. Atty., Ft. Smith, Ark., for plaintiff.

Eli Leflar, J. Wesley Sampier, Rogers, Ark., Wade & McAllister, Fayetteville, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

On August 2, 1962, plaintiff filed its complaint to condemn and acquire title to the following tracts of land:

The fee simple title to Tract No. 1323, containing approximately 25 acres in the NE¼ of the SE¼ of Sec. 34, T 19 N, R 29 W, in Benton County, Arkansas. Earnest Wiseley and wife, Naomi Wiseley, owners.

The following tracts of land owned by Elzie McElhaney and wife, Opal McElhaney:

The fee simple title to Tract 1324–1, being the SW¼ of the NW¼ and that part of the NW¼ of the SW¼ lying north of the bluff, said bluff being on the south side of White River, all in Sec. 35, and part of the SE¼ of the NE¼ of Sec. 34, T 19 N, R 29 W, in Benton County, Arkansas, containing 75.5 acres, more or less.

The fee simple title to Tract 1324–2, being part of the NW¼ of the SE¼ of the NE¼ of Sec. 34, T 19 N, R 29 W, containing 0.94 acre, more or less.

Perpetual flowage easements on:

Tract No. 1324E–1, containing 1.0 acre, more or less.

Tract No. 1324E–2, containing 0.25 acre, more or less.

Tract No. 1324E–3, containing 0.25 acre, more or less.

The declaration of taking was filed August 2, 1962, and on the same date order was entered requiring the owners and all persons in possession or control of the property to surrender possession thereof to the plaintiff within five days from the date of the service of a copy of the order.

On September 17, 1963, Commissioners were appointed as provided by Rule 71A(h), Federal Rules of Civil Procedure.

A pretrial conference was conducted by the Commission at the City Auditorium in Rogers, Arkansas, on October 28, 1963, at which time the landowners and the White River Sand & Gravel Company, Inc., a lessee, appeared in person and by their attorneys. The case was set for hearing November 25, 1963, and continued for three days. During the course of the hearing 19 witnesses testified and 18 exhibits were introduced on behalf of the Government and 20 by the landowners and lessee.

During the course of the hearing it was announced by the parties in interest that the Government and Mr. and Mrs. McElhaney had reached an agreement with respect to the interest acquired in Tracts Nos. 1324–1, 1324–2, 1324E–1, 1324E–2 and 1324E–3, leaving insofar as those tracts were concerned only the question of just compensation of the leasehold estate of the White River Sand & Gravel Company, Inc., in said tracts.

The report of the Commission was filed on December 5, 1963.

White River Sand & Gravel Company, Inc., filed objections to the report on December 14, 1963. Earnest Wiseley filed objections to the report on December 17, 1963, and the plaintiff filed its response to the objections on January 9, 1964.

On December 18, 1963, following the filing of the objections to the report, the court addressed a letter to the attorneys for the landowner, Wiseley, and for the lessee, White River Sand & Gravel Company, Inc. In that letter the court stated:

"I have not examined the report and have only casually read the objections, but I shall give consideration to the report and objections as soon as the business of the court will permit, unless you should desire to procure and submit to me a transcript of the testimony taken at the

hearing. In the event you desire to submit a transcript of the testimony for use by me in considering the objections and exceptions to the report, I shall thank you to advise as soon as you may reasonably do so."

On December 23, 1963, the attorneys for Wiseley advised that they were investigating the cost of obtaining a transcript of the testimony and would consult with the attorneys for White River Sand & Gravel Company, Inc., and decide whether to furnish a transcript of the testimony. On January 16, 1964, the attorneys for the White River Sand & Gravel Company, Inc., advised that the parties had been unable to agree to submit to the court a transcript of the testimony. They further stated:

" * * * We, therefore, request that you give consideration to the report and objections thereto in your review of the case at your convenience.

"Insofar as White River Sand & Gravel Company, Inc., owners of the leasehold interest is concerned, we do not desire to request oral argument unless requested by the Court. It is our understanding that the attorneys for the landowners have requested an opportunity for oral argument and we, of course, have no objections to their presenting oral argument to the Court. However, we have taken a position in behalf of White River Sand & Gravel Company, Inc., that unless the transcript of the testimony is furnished to the Court or unless the Court requests oral argument, we do not wish to present oral argument in behalf of our client unless a transcript of the testimony is available to the Court."

On January 20, 1964, the attorneys for Wiseley by letter advised the court as follows:

"Reference is made to your letter of December 18 and Mr. McAllister's letter of January 16. Since the parties have been unable to agree on furnishing the funds for supplying the quite expensive transcript, the landowner, Mr. Wiseley, joins the lessee, the White River Sand & Gravel Company, in its request that you give consideration to the report, the objections, the Government's response and the enclosed reply, at your convenience.

"The request of the landowner for an opportunity for oral argument is hereby withdrawn, the enclosed 'Reply to Government's Response' being submitted in lieu thereof."

Accompanying the letter was the reply of Wiseley to the Government's response to the objections filed to the report.

Prior to the correspondence above quoted, the court had been called upon in other cases to determine whether it should order at the request of the landowners a transcript of the testimony introduced at the hearing. After considering the question, the court decided that it had no right or authority to order a transcript of the record furnished at the expense of the Government. Attorneys representing landowners were generally advised of such ruling, but nevertheless the court felt in this case that the landowners and the lessee should have an opportunity to procure and furnish a transcript for use by the court in considering the report of the Commission and the objections thereto.

In the objections to the report of the Commission, the response of the Government, and the reply thereto by Wiseley, the attorneys have included arguments and citations of authorities in support of their respective contentions. In other words, the objections, the response and the reply thereto are, in fact, briefs and arguments.

Tract No. 1323, Wiseley, consisting of 25 or 26 acres is situate in a bend of White River about seven miles from Rogers, Arkansas. The White River runs through the southern portion of the tract against a high bluff. North of the tract there is another bluff or escarpment, as described by the geologist who testified. Most of the tract is below mean sea

level of 1,060 feet and floods on an average of once every two years, but has not been flooded to that level in the last three years. A large portion of the tract is underlaid with sand and gravel.

On May 12, 1956, Wiseley and wife executed and delivered to White River Sand & Gravel Company, Inc., a sand and gravel lease "for the sole purpose of exploring and operating for sand and gravel in and on the bed, bars and banks of the White River where said stream flows through the lessor's hereinafter described lands * * * for the term of two years from the date hereof, and as much longer as sand and gravel are being profitably produced thereon." The lease further provided that the landowner should have a lien upon any and all of lessee's machinery, appliances and equipment for any unpaid royalty due under the lease, which was fixed at 10 cents per ton, with a provision for a minimum payment of $150 per year regardless of the quantity of sand and gravel produced from the land.

On the same date, May 12, 1956, McElhaney and wife executed and delivered to the White River Sand & Gravel Company, Inc., a lease on the SE¼ NE¼ of Sec. 34 and the SW¼ NW¼ of Sec. 35, T 19 N, R 29 W, "for the term of two years from the date hereof and as much longer as the lessee is operating for sand and gravel" by reason of the Wiseley lease. The stated purpose of the McElhaney lease was "for the establishment and maintenance of storage space for sand and gravel preparatory to the sale and removal thereof; but it is expressly understood that the lessee will use not in excess of one acre of ground presently under cultivation." The lessee agreed to pay $100 each year during the term of the lease, and the lessor was granted a lien on any and all of the lessee's machinery, appliances and equipment for any unpaid rent.

On August 4, 1958, McElhaney and wife executed another lease to the sand and gravel company in identical terms with the lease of May 12, 1956, except that it permitted the lessee to use a maximum of five acres and fixed the rental at $160 per year.

The Commission described in some detail the procedure that was followed by the lessee in mining the sand and gravel. The operation was efficiently conducted by the lessee, and there was a ready market for the production. Approximately 111,000 cubic yards of sand and gravel were removed from the tract between 1956 and 1962, a period of 77 months. The District Geologist of the Corps of Engineers testified that the average depth of gravel on this tract was 10 feet, and that the number of cubic yards in place at approximately the date of the taking of the tract was 131,000. His testimony was based upon a great number of borings made by the Corps of Engineers. The testimony also disclosed that when a rise occurs on the White River reaching any appreciable flood stage, sand and gravel are brought from upstream and deposited in the holes created by the removal of sand and gravel by the lessee. This process was referred to by the witnesses as replenishment. The highest and best use for Tract 1323 is for the production of sand and gravel.

The testimony further disclosed that as of the date of the taking there was no other sand and gravel operations in the immediate vicinity of Rogers, Arkansas, but there was competition from operators of crushed limestone plants; and that in the area upstream from Tract 1323 there are similar deposits of sand and gravel varying as to depth and the amount of overburden, as well as variations from the location of the material to the distance of the escarpment from the river itself, which would affect the particular type of operation that was being engaged in by the sand and gravel company. The quality of the other sand and gravel deposits is not shown by the testimony, but the locations are shown on Government Exhibits 10 and 16. There was some testimony of the location of sand and gravel from other stream beds, but the testimony did not establish that the operation from other stream beds would be economically feasible.

Wiseley was receiving 10 cents per cubic yard royalty but the testimony shows that the average royalty for such material is 5 cents per cubic yard.

In the opening paragraph of the objections of Wiseley to the report he asks "a review of the report of Commissioners, filed herein on December 5, 1963, insofar as this defendant is concerned, for the reason that the following findings, under the evidence, were clearly erroneous." It is then argued in the objections that the findings of the Commission are clearly erroneous for the reasons set forth. The prayer of the objections is "that this court review the record and report of findings of the Commission, and increase the award to defendant Wiseley to an amount not less than $25,000.00 as just compensation, under the evidence in the record, or, in the alternative, that the matters at issue be determined by trial by jury."

In the reply of Wiseley to the Government's response to the objections in paragraph numbered 1, he stated:

"Throughout the response the Government makes reference to testimony outside the report of Commissioners. Unless the Government desires to furnish a transcript of the evidence, it, like defendant Wiseley, is bound by the Commissioners' findings, unless those findings are clearly erroneous."

The entire argument of Wiseley is predicated on the proposition that Tract 1323 was the only site within a radius of many miles of the City of Rogers, from which sand and gravel could be profitably produced and that he had thereby acquired a monopoly on the production of sand and gravel from which profits and royalties would flow at a high rate indefinitely; that if anyone wanted to enter the sand and gravel business in the vicinity of Rogers, Arkansas, such person would of necessity be required to purchase Tract 1323, and that the proper way of measuring the value of such a site is by determining the present value of the future flow of profits and royalties from the sand and gravel business being conducted on said tract.

The Commission found that there were other available sites for the production of sand and gravel in the general area, and a person desiring to go into such business would not be required of necessity to purchase Tract 1323. Apparently the defendants Wiseley and White River Sand & Gravel Company, Inc., failed to distinguish between the value of a site available for the production of sand and gravel and the value of a sand and gravel business being conducted on such site. It is obvious that the Government is required to pay only for the land taken and not for the business conducted thereon which was not taken. The lease under which the sand and gravel company was operating did not require the lessee to pay the landowners a fixed amount for a fixed term. The lease was to continue only for as long as sand and gravel were being profitably produced from the land.

Evidently the Commission recognized that Tract 1323 had some superiority over other available sites, since the Commission awarded just compensation in the sum of $10,000, or $400 per acre for the 25 acres, even though only a very small portion thereof was or could be used for the production of sand and gravel.

The court has heretofore set forth the terms of the lease executed by Wiseley to the sand and gravel company on Tract 1323, and also the terms of the lease under which the sand and gravel company was using a portion of the McElhaney tracts. In addition to those leases, McElhaney and wife, on December 16, 1960, leased to the sand and gravel company 8 acres of land situated in Tracts 1324–1 and sub-numbers. The particular 8 acres lies immediately east and adjacent to the Wiseley tract, No. 1323, and by the terms of the lease, the lessee acquired the right to procure sand and gravel from the 8-acre tract. It should be remembered that prior to the execution of the lease on December 16, 1960,

the only right that the lessee had in the McElhaney lands was to use them for storage and location of certain machinery. It is also apparent from a reading of the terms of the lease that it was executed for the purpose of taking as much sand and gravel as was possible from the land prior to its acquisition by the Government. In fact, the lease provides that it "is for a period of one year (1) and or until such time as the land of the lessors may be purchased by the United States Government on account of the construction of the Beaver Dam Reservoir, it being understood that if the United States Government has not purchased said land at the expiration of one year from date then this lease is extended until such purchase occurs." The lease further provided, "that lessee will begin operations under this lease as soon as practicable on the part of the lessee taking into consideration the condition of the land, the stage of White River, the demand and market for sand and gravel and or the contracts for sand and gravel held by lessee."

The objection of the sand and gravel company to the report of the Commission is stated in the objections as follows:

"That the award of $2,500.00 for the value of the leasehold estate in Tract 1323 is inadequate for the reason that the factual findings are clearly erroneous in that both Government appraisers found that there was no market value for the leasehold interest in Tract 1323."

■■ All of the witnesses, including the landowner, Mr. Wiseley, in testifying as to the value of Tract 1323, arrived at their opinions of value either directly or indirectly by multiplying the estimated number of tons in place by some fixed amount per ton, either profit or royalty. The landowner was entitled to show the adaptability of his land for use in a particular business, that is, the sand and gravel business, which was found by the Commission to be the highest and best use of the tract. In addition, they were permitted to present evidence as to the quality, quantity, market conditions, feasibility of removal, and the replenishment potential, but it does not follow that the landowner was entitled to have the value of the tract based upon either speculative past or future profits. See, United States v. 620.00 Acres of Land, etc., (W.D.Ark.1952) 101 F.Supp. 686; United States v. 765.56 Acres of Land, etc., in the Town of Southampton, (E.D. N.Y.1959) 174 F.Supp. 1.

In Georgia Kaolin Co. v. United States, 214 F.2d 284, at page 286 (5 Cir. 1954), the court said:

"In eminent domain proceedings, the existence of valuable mineral deposits in the condemned land constitutes an element which may be taken into consideration if and in so far as it influences the market value of the land. The reason for this rule is said to be that the measure of compensation in such cases is the market value of the land to be condemned, taken as a whole and with due consideration of all the components that tend to make its market value. This rule has been applied to limestone deposits, gold ore, fire clay, coal, stone, and sand and gravel, 156 A.L.R. 1416–1417; but there can be no recovery for both the value of the land and its mineral deposits as two separate items. Atlanta Terra Cotta Co. v. Georgia Ry. & Electric Co., 132 Ga. 537, 64 S.E. 563; United States v. 620.00 Acres of Land, etc., D.C., 101 F.Supp. 686; Orgel on Valuation, under Eminent Domain, page 544, rejecting the method of estimating the amount of stone in situ and multiplying this amount by a fixed price per unit; also citing Searle v. Lackawanna and Bloomsburg Railroad Company, 33 Pa. 57. In rejecting the method of multiplying the estimated amount of clay by a fixed price per unit, the conclusion is largely based on its speculativeness. In discussing this point, the court below said that whether or not the deposits would be mined and the royalties paid would depend upon the condition of the market, the un-

certainty of the future, the demand for the product, 'and many other elements, on and on, in the future.' "

■ The White River Sand & Gravel Company, Inc., relies upon United States v. General Motors Corp., (1945) 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, in support of its contention that it is entitled to receive compensation for damage and depreciation in value of their removable trade fixtures. The decision in General Motors is limited to the special situation where the Government takes temporary occupancy only, and thus a part rather than a whole of a leasehold. The court discussed the distinction between the two situations, and after stating that the expense of removing fixtures and personal property from the premises, the loss of good will and other consequential losses are not compensable when the fee is taken, stated at page 380 of 323 U.S., at pages 360–361 of 65 S.Ct., 89 L.Ed. 311:

"The question posed in this case then is, shall a different measure of compensation apply where that which is taken is a right of temporary occupancy of a building equipped for the condemnee's business, filled with his commodities, and presumably to be reoccupied and used, as before, to the end of the lease term on the termination of the Government's use?"

The question was answered in the affirmative. Thus, when and only when the United States takes temporary occupancy of property where there is a tenant in possession under a lease which will still have some of the term remaining after the Government's occupancy, consequential damages, including removal expenses, may be considered in the ascertainment of market value of the interest taken. Only where such temporary occupancy is taken may destruction or depreciation in the value of "trade fixtures" be considered. The distinction was reaffirmed and the exception held inapplicable to the taking of the entire leasehold in United States v. Petty Motor Co., (1946) 327 U.S. 372, 379, 66 S.Ct. 596, 90 L.Ed.

729; United States v. Westinghouse Elec. & Mfg. Co., (1950) 339 U.S. 261, 70 S.Ct. 644, 94 L.Ed. 816; Kimball Laundry Co. v. United States, (1949) 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765.

Any permanent improvements which the sand and gravel company may have placed on the McElhaney Tracts (1324–1–2, and E–1–2–3), such as cattle guards, access roads, and concrete piers, would belong to the owner of the fee simple estate upon the termination of the lease and, of course, would enhance the value of the fee simple estate which was owned by McElhaney and with whom the Government has already settled.

As to the contention of Wiseley and White River Sand & Gravel Company, Inc., relative to the duty of the Commissioners to accept the opinions of witnesses whose testimony was based upon the value of the business, the court in Mitchell v. United States, (1925) 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644, beginning at the bottom of page 344 of 267 U.S., at pages 293–294 of 45 S.Ct. said:

"The special value of land due to its adaptability for use in a particular business is an element which the owner of land is entitled, under the Fifth Amendment, to have considered in determining the amount to be paid as the just compensation upon a taking by eminent domain. Boom Co. v. Patterson [8 Otto 403], 98 U.S. 403, 408 [25 L.Ed. 206]; [City of] New York v. Sage, 239 U.S. 57, 61 [36 S.Ct. 25, 60 L.Ed. 143]. Doubtless much special value of the plaintiffs' land was duly considered by the President in fixing the amount to be paid therefor. The settled rules of law, however, precluded his considering in that determination consequential damages for losses to their business, or for its destruction. Joslin Manufacturing Co. v. [City of] Providence, 262 U.S. 668, 675 [43 S.Ct. 684, 67 L.Ed. 1167]. Compare Sharp v. United States, 191 U.S. 341 [24 S.Ct. 114, 48 L.Ed. 211]; Campbell v. United

States, 266 U.S. 368 [45 S.Ct. 115, 69 L.Ed. 328]. No recovery therefor can be had now as for a taking of the business. There is no finding as a fact that the Government took the business, or that what it did was intended as a taking. If the business was destroyed, the destruction was an unintended incident of the taking of land. There can be no recovery under the Tucker Act if the intention to take is lacking. Tempel v. United States, 248 U.S. 121 [39 S.Ct. 56, 63 L.Ed. 162]. Moreover, the Act did not confer authority to take a business. In the absence of authority, even an intentional taking cannot support an action for compensation under the Tucker Act. United States v. North American [Transp. & Trad.] Co., 253 U.S. 330 [40 S.Ct. 518, 64 L.Ed. 935]."

See, also, Kimball Laundry Co. v. United States, supra.

The Commission in numbered paragraph 21 of its report stated:

"Considering the facts as hereinabove found, and the opinion evidence as to value and in the light of the discussion above and the instructions of the Court, the Commission finds that the fair market value of the entire fee, inclusive of the leasehold estate on Tract #1323 is $10,000; that the value of the leasehold estate is the sum of $2500; and therefore the Commission fixes just compensation for the taking of Tract #1323 at $10,000 and apportions said sum $7500 to the landowner and $2500 to the lessee, White River Sand & Gravel Company."

In numbered paragraph 22 the Commission found that with respect to the McElhaney tracts, the value of the leasehold estate of White River Sand & Gravel Company, Inc., is $500 as its fair market value, and therefore fixes just compensation for the leasehold estate in said tracts at $500.

In numbered paragraph 20 the Commission said:

"This case presents a curious situation in that the 25 acres in Tract #1323 would not have a great deal of value for sand and gravel purposes without the availability of the processing site on the McElhaney land. And by the same token, the lease on the McElhaney land for processing plant would be of no value without the right to remove the sand and gravel from the Wiseley tract (#1323). By reason of the fact that the White River Sand & Gravel Company obtained leases on both tracts, one for a processing site and the other for the removal of sand and gravel, the whole integrated business of the White River Sand & Gravel Company was economically feasible and made Tract #1323 of greater value."

The White River Sand & Gravel Company, Inc., in its exceptions asks that the court "upon review of the record modify the report of the Commissioners by increasing the award of just compensation to petitioner or in the alternative that petitioner be permitted to have a trial by jury on the issue of the award of just compensation."

As heretofore mentioned, Wiseley makes the same request.

This court does not have the right to reconsider, weigh and evaluate evidence to arrive at its own independent conclusions, but must accept those of the Master unless clearly erroneous. In the opinion of the court the findings of fact of the Commission are supported by substantial testimony, and the amount of just compensation found by the Commission does not result from a mistaken view of the law, and therefore it is the duty of this court to approve the report of the Commission and to overrule the objections and exceptions made by the defendants to such report. United States v. 992.61 Acres of Land, etc., (W.D.Ark. 1962) 201 F.Supp. 578; United States v. 1,674.34 Acres of Land, etc., (W.D. Ark.1963) 220 F.Supp. 893; United States v. Rainwater, (8 Cir. 1963) 325 F.2d 62.

As to the demand of the landowner and the lessee that in the event the court does not by its order increase the amount awarded as just compensation by the Commission, it set aside the report and grant them a trial to a jury, a similar request was made in United States v. 1,674.34 Acres of Land, etc., supra, which request the court denied and took occasion at page 896 of 220 F.Supp. to discuss the question. No reason exists for further discussion of the request.

An order is being entered today confirming, approving and adopting the report of the Commission, and overruling the objections and exceptions made by the landowner and the lessee.