**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**83.32 ACRES OF LAND, etc., and Georgia Vitrified Brick and Clay Company, et al., and Unknown Owners, Defendants-Appellees.**

**No. 73-1159
Summary Calender.***

United States Court of Appeals,
Fifth Circuit.

July 2, 1973.

---

* Rule 18, 5th Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York

et al., 5th Cir. 1970, 431 F.2d 409, Part I.

R. Jackson B. Smith, Jr., U. S. Atty., Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., Jacques B. Gelin, Kent Frizzell, Asst. Atty. Gen., Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Otis F. Askin, Augusta, Ga., for Ga. Vitrified Brick.

Glenn B. Hester, Fred K. Harvey, Jr., Augusta, Ga., for defendants-appellees.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

PER CURIAM:

This is an appeal from a final judgment in condemnation awarding $360,000 to a landowner, Georgia Vitrified Brick and Clay Company, for the taking of approximately forty-four acres of land underlain by extensive deposits of phyllitic clay, an important raw material in the landowner's manufacture of sewer pipe, tile, and related vitreous products. Aside from appellant's numerous attacks on the trial court's findings of fact, which we decline to disturb, only one point deserves mention. The United States argues that, in computing the award, the trial court violated our holding in Georgia Kaolin Co. v. United States, 5th Cir. 1954, 214 F.2d 284, by multiplying the number of tons of phyllite recoverable from the tract by the royalty per ton. This argument is without merit because it misconceives the manner in which the court below computed the award.

The trial court estimated that the forty-four acre tract was underlain by four million recoverable tons of phyllite. This figure is amply supported by the record, and reflects a conservative estimate of the recoverable reserves of phyllite, other estimates at trial having ranged as high as 4.9 million tons of recoverable reserves. The trial court then multiplied four million tons by nine cents a ton, to arrive at an award of $360,000. The nine cent figure was *not* a royalty to be paid in connection with a lease of the minerals. Rather, it represented the accepted method of calculating the value of a fee simple interest in the land itself, as opposed to the value of the minerals, and was derived by taking one-half of a reasonable royalty per ton (twenty-five cents per ton) and making further deductions for the cost of mining and transportation. This method of computing the value of the land itself had been employed in several comparable sales in the area.

Thus, the trial court did not follow the method of computing damages that we condemned in Georgia Kaolin, supra, by multiplying a per-ton royalty by the estimated reserves. Instead, the court used the same process that would have been used to calculate the "price which would be agreed upon at a voluntary sale between an owner . . . and a purchaser . . .", a method expressly approved in Georgia Kaolin, supra, 214 F.2d at 285. Accordingly, the judgment below is affirmed.